UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 09-35324 |
| Sonya Porretto | § | |
| | § | (CHAPTER 7) |
| DEBTOR | § | |

### NOTICE OF ABANDONMENT OF PORRETTO BEACH AND ALL OTHER BEACH FRONT LOTS

### NOTICE PURSUANT TO BLR 6007

**YOU ARE HEREBY NOTIFIED OF THE FOLLOWING PROPOSED ABANDONMENT. IF YOU OPPOSE THE ABANDONMENT, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE AN OBJECTION AND/OR RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN FOURTEEN (14) DAYS OF THE MAILING OF THIS NOTICE. YOUR RESPONSE MUST STATE WHY THE RELIEF SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE PROPERTY SET FORTH BELOW SHALL BE DEEMED ABANDONED.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Randy Williams, chapter 7 Trustee in this case files and serves this Notice of Abandonment, and would respectfully show as follows:

1.      On December 21, 2016, this Court, at Docket #647, approved the Expedited Motion to Approve Private Sale, Docket #637. The gross sales price was $6,000,000. The sale has not closed; however, the buyer, WRCB, L.P. Texas limited partnership (the "Buyer") moved forward to address the contingencies to be met in order to allow the sale to close. During 2017, Randy W. Williams, the chapter 7 trustee ("Trustee") worked with the Buyer to secure the required approval(s) from the State of Texas. After securing the beach front development certificate, the Trustee and Buyer turned attention to obtaining necessary approvals from the City of Galveston.

2.      The Trustee understood from Sonya Porretto (the "Debtor") that her father, Henry Porretto (deceased) obtained the approval of the City of Galveston to abandon various alleys,

streets and rights of way that cross the Porretto Beach property.  When the Trustee asked the City of Galveston City Council to approve the prior abandonment as part of the Buyer's efforts to develop the Property, the Debtor appeared before City Council and informed them that in fact her father had not wanted to proceed with the abandonment and did not want it.

3. The City of Galveston then required the Trustee to proceed to request a new abandonment that would require compensation be paid to the City.  The Trustee obtained approval in 2017 of a process that led in 2018 to the establishment of the amount of compensation the City of Galveston would have to paid in order to secure abandonment of the alleys, streets and rights of way when the sale of the Porretto Beach property closes.

4. The Trustee and Buyer then moved forward to work with the Corps of Engineers and Galveston County to obtain additional permits and/or give necessary notices required by the Buyer.

5. During the 4th quarter of 2019, the Trustee and Buyer discussed the status of the proposed sale and what steps were still needed for the Buyer to proceed to closing.  The Trustee was informed that the Buyer felt it necessary to restart the development/permitting process with the State of Texas, which would ultimately also require local approval.  In December, 2019, the Trustee executed at the Buyer's request a letter to the State of Texas seeking such approval.

6. As of today, the Buyer does not have an amended or new beachfront development certificate from the State of Texas.  There is no date set by when the Buyer believes it will have the necessary approvals, permits, etc. that the Buyer requires to proceed with closing.

7. This case is now over ten (10) years old, and the Buyer had 2017, 2018 and 2019 to get itself into position to close the proposed sale.  In addition, there is no reason to believe that the current economic environment enhances the likelihood that the Buyer is ready to proceed with closing.

8. As a result, pursuant to 11 U.S.C. § 554 (a) and Bankruptcy Rule 6007, the Trustee gives notice of his intent to abandon any and all interest of the estate in and to any and all real property owned by Sonya Porretto at the time this case was filed, including but not limited to, the Property known as Porretto Beach (and more specifically described as follows, as well as the estate's interest in the pending contract for sale approved by this Court) as well as the other beach front lots identified below:

Tract B:
Landward of the mean higher high tide line: Lots Eight (8), Nine (9), Ten (l O), Eleven (l l), Twelve (12), Thirteen (13), and Fourteen (14), in Block Six (6), in the City and County of Galveston County, Texas and only being all of those portions of the subject property lying South of the Seawall.

Tract C:
Landward of the mean higher high tide line: The Southerly portion of Lot Ten (10) of Block Sixty-seven (67), all in the City and County of Galveston, Texas and only being all of those portions of the subject property lying South of the Seawall.

Tract D:
Landward of the mean higher high tide line: Lots One (l), Two (2), Three (3), in Block Seven (7), in the City and County of Galveston, Texas, and only being all of those portions of the subject property lying South of the Seawall.

Tract E:
Landward of the mean higher high tide line: Lots Eight (8), Nine (9), and Ten (l O), in Block Seven (7), in the City and County of Galveston, Texas and only being all of those portions on the subject property lying South of the Seawall.

Tract F:
Landward of the mean higher high tide line: Lots Eight (8), Nine (9), Ten (l O) and Eleven (l l), in Block Eight (8), in the City and County of Galveston, Texas. Lots Seven (7), Eight (8), Nine (9), Ten (10), Eleven (l l) and Twelve (12) in the Northeast Quarter of Out Lot Twenty- four(24). Lots One (l ) through Fourteen (14), inclusive, in the Southeast Quarter of Out Lot Twenty-four (24). Those portions of Lots One (l) through Fourteen (14), inclusive, in the Northwest Quarter of Out Lot Twenty- Five (25) lying South of the Seawall. Lots One (l ) through Seven (7), inclusive. Lot Fourteen (14) and those portions of Lots Eight (8) through Thirteen (13), inclusive, located landward of the mean higher high tide line in the Northeast Quarter of Out Lot Twenty-Five (25), Lots One (l) through Three (3), inclusive and those portions of Lots Four (4), Five (5), Six (6), Seven (7), Twelve (12), Thirteen (13) and Fourteen (14) located landward of the mean higher high tide line, in the Southwest Quarter of Out Lot Twenty-Five (25), all in the City and County of Galveston

The foregoing lots are all subject to the Order approving sale referenced above, however, in addition, the estate owns an interest in the following lots:

Tract G:
The Southeast Quarter, of Out Lot Forty-nine (49), all in the City and County of Galveston only being all of those portions of the subject property lying South of the Seawall.

Tract H:
The Southwest Quarter of Out Lot Forty-nine (49), all in the City and County of Galveston only being all of those portions of the subject property lying South of the Seawall.

Tract I:
Lots Eight (8), through Ten (10), inclusive, and the one-half (1/2) of Lot Eleven (11), in the Northeast Quarter of Out Lot Forty-eight (48) all in City and County of Galveston and only being all of those portions of the subject property lyin, South of the Seawall..

Tract J:

The Northwest Quarter of Out Lot Seventy-two (72), in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the M p of the City of Galveston in common use.

Tract K:

The Southwest Quarter of Out Lot Seventy-two (72), in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract L:

The Southeast Quarter, of Out Lot Seventy-One (71), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract M:

The Northeast Quarter of Out Lot One hundred-nineteen **(119),** all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract N:

The Southeast Quarter, of Out Lot One hundred-nineteen (119), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common

Tract O:

Part of Lots Eight (8) through Thirteen (13), inclusive, of the Northwest Quarter of Out Lot One hundred forty-one (141), all in the City and County of Galveston and only being .all of those portions of the subject property lying South of the Seawall based on.the Map of the City of Galveston in common use.

Tract P:

Lots One (l) through seven (7), inclusive, of the Southwest Quarter of Out Lot One hundred forty-one (141), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based o n the Map of the City of Galveston in common use.

Tract Q:

Lots Eight (8) through Fourteen (14), inclusive, of the Southwest Quarter of Out Lot One hundred forty-one (141), all in the City and County and being all of those portions of the subject property lying South of the Sea. , based on the Map of the City of Galveston in common use.

9. The Debtor's mother, Rosemarie Porretto, has a secured claim against all of the foregoing real property for $1,019,000.00 as of the Petition date. In addition, Rosemarie Porretto would have a claim for ten years of interest plus attorney's fees of an undetermined amount. John Anderson, by virtue of a compromise during the chapter 11 case, asserts a secured claim against the real property in excess of $300,000. Greer, Herz, special counsel to the Debtor and chapter 7 trustee, has a contingency claim of no less than a third of the proceeds received by the estate from

a sale of the real property.  Debtor's pre-petition counsel has an unpaid, chapter 11 administrative claim in excess of $70,000.  In addition, pursuant to the abandonment of alleys and rights of way approved by the City of Galveston in 2018, it is estimated that the estate would owe the City of Galveston almost $800,000 from a sale of the real property subject to the approved contract.  As a result, there is little, if any, equity in the proposed sale of real property, even though the contract price is $6,000,000.

10.   The Trustee had expressions of interest over the years in the other lots (G-Q), but never received a written contract/offer.  The expressions of interest were in the range of $1,000 to $300,000 for lots G through Q referenced above, but again, no contract has ever been tendered to the estate.

11.   During the chapter 11, the Debtor hired a broker to assist her with the sale of the real property which was unsuccessful.  The Trustee also retained a broker and had two (2) $6,000,000 contracts (both approved by this Court), the first of which the buyer withdrew from, leading to the current contract which is allegedly still pending.

12.   The docket of this case reflects that both during the chapter 11 and chapter 7, there have been numerous contested matters related to the real property, with numerous pleadings and hearings related to same.  The sale of beach front property that is subject to commercial development is fraught with complications and difficulties even when all parties are working to the same end.  Here, where there have been disputes between the State, the City and County of Galveston, the Debtor, the secured lender, creditors and parties in interest, the complications and difficulties are compounded.

13.   There is no reason to believe that the Buyer can do anything other than continue to express that it will use "best efforts" to try and some day close the contract.

14. In conclusion, the Trustee believes that there is little, if any, equity in the real property for the benefit of the estate and/or unsecured creditors. The history of this case as reflected in the docket, the contested matters and litigation related thereto and the efforts to market and sell the real property demonstrate that the real property and the contract(s) are burdensome and/or of inconsequential value and/or benefit to the estate. Therefore, pursuant to 11 U.S.C. §554 (a), the Trustee gives notice of the abandonment of the real property interests scheduled by the Debtor and as set forth herein.

WHEREFORE, PREMISES CONSIDERED, the Trustee gives notice of his intent to abandon the real property scheduled by the Debtor and as described herein and for such other and further relief to which the Trustee may be entitled.

DATED: April 27, 2020.

Respectfully submitted,
*/s/ Randy W. Williams, Trustee*
Randy W. Williams, Trustee
Byman & Associates PLLC
7924 Broadway, Suite 104
Houston, TX 77002
281.884.9269 Phone
rww@bymanlaw.com

**CERTIFICATE OF SERVICE**

I, Randy W. Williams, do hereby certify that on April 27,2020 a true and correct copy of the foregoing was served on all parties receiving notice by ECF, as well as, first class U.S. mail, postage prepaid, to all parties identified on the Debtor's mailing matrix and counsel for the buyer was provided with notice by email.

*/s/ Randy W. Williams*